### In re MERRILL LYNCH FOCUS TWENTY FUND INVESTMENT COMPANY ACT LITIGATION.

No. 02–CV–5592(TCP).

United States District Court, E.D. New York.

Oct. 30, 2003.

Joel C. Feffer, Wechsler Harwood LLP, New York City, for Plaintiff April Scalisi.

James N. Benedict, Clifford Chance LLP, New York City, for Defendant Fund Asset Management, L.P.

Marvin E. Barkin, Trenam, Kemker, Schars & Barkin P.C., Tampa, FL, Thomas J. Lilly, O'Donnell, Schwartz, Glanstein & Lilly LLP, Garden City, NY, for Defendant Merrill Lynch Focus Twenty Fund, Inc.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants Fund Asset Management, L.P. and the Focus Twenty Fund, Inc. move pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(6) and 23.1 to dismiss Plaintiffs' Complaint in this derivative action filed under § 36(a) of the Investment Company Act of 1940 ("the 1940 Act"). The Court heard oral argument on October 3, 2003. For the following reasons, Defendants' motion is DENIED on the grounds of Rules 12(b)(6) and 8(a), but GRANTED on the ground of Rule 23.1.

## Background

### A. Factual Background

Plaintiffs are shareholders in the Focus Twenty mutual fund, a Maryland corporation based in New Jersey and registered under the 1940 Act, that is advised by Fund Asset Management, a Delaware limited partnership also based in New Jersey. Both the mutual fund and the management company are subsidiaries of Merrill Lynch & Co., the global financial services company. (*See* Complaint at ¶¶ 6, 7; Defendants' Memorandum in Support of their Motion to Dismiss at 3.)

At the behest of Fund Asset Management, the Focus Twenty Fund placed 4% of its portfolio into the now-worthless stock of the Enron Corporation. Plaintiffs allege that during the time the management company encouraged the mutual fund to invest in Enron, the management company both knew of the impending financial insolvency of Enron *and* received substantial income, such as underwriting fees, from Enron. When Enron finally collapsed, the mutual fund's shareholders suffered related economic damages. (*See* Complaint at ¶¶ 12–17.)

### B. The Cause of Action

Shareholder April Scalisi filed suit against Fund Asset Management and the Focus Twenty Fund on October 18, 2002, and this Court designated Ms. Scalisi's pleading as the Consolidated Complaint of this derivative action on January 31, 2003. Plaintiffs seek relief for breach of fiduciary duties owed them under § 36(a) the 1940 Act, and also under common law claims of negligence, gross negligence and negligent misrepresentation. Plaintiffs ask for, *inter alia,* damages equal to the Fund's losses as a result of its investment in Enron. (*See* Complaint at ¶ 1 and p. 21.)

Plaintiffs further assert that they are excused from the demand requirement that normally exists in derivative suits. Eight of the nine independent members of the board of directors of the Focus Twenty Fund receive between $160–260,000 in compensation for their services on the boards of mutual funds run by Fund Asset Management. (*See* Complaint at ¶ 24.) Therefore, Plaintiffs ar-

gue, any demand that the mutual fund's directors sue the management company to recoup the fund's losses would be futile. (See Complaint at ¶ 45.)

Defendants respond that § 36(a) does not provide for a private right of action; and, assuming that § 36(a) did provide such a right, Plaintiffs failed to demonstrate that demand would be futile, as the directors are neither conflicted by the Fund's Enron investment nor controlled or functionally employed by the management company, and also that Plaintiffs failed to allege personal misconduct on the part of Fund Asset Management, as required by § 36(a). (See Defendants' Memorandum at 8, 17, 26.) Defendants also seek dismissal of Plaintiffs' state law claims for failure to satisfy FED.R.CIV.P. 8(a)'s requirement to plead allegations of negligence with sufficient particularity. (See Defendants' Memorandum at 29.)

## Discussion

### A. Motion to Dismiss

#### 1. The burden of proof under FED. R. CIV. P 12(b)(6)

Under a motion to dismiss for failure to state a claim upon which relief may be granted, the defendant bears the burden of proof to show that even if all allegations contained in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor, the plaintiff is still not entitled to the relief sought. See Bishop v. Porter, 2003 WL 21032011 at *2, 2003 U.S. Dist. LEXIS 7625 at *8 (S.D.N.Y. May 8, 2003).

#### 2. Private rights of action for breach of fiduciary duties under § 36(a)

Plaintiffs sue under the 1940 Act's provision concerning breaches of fiduciary duties. Section 36(a) states, in pertinent part, that the Securities and Exchange Commission ("SEC") is authorized to bring an action alleging that an officer, director or investment adviser has engaged an act or practice constituting a breach of fiduciary duty, involving personal misconduct, regarding a registered investment company. See 15 U.S.C. § 80a–35(a).

Defendants suggest that by the terms of the statute, there is no private right of action under § 36(a)—that the right to bring an action is reserved to the SEC. (See Defendants' memorandum at 17.) Plaintiffs state that there exists an implied private right of action under the statute that has long been recognized by the courts. (See Plaintiffs' memorandum at 20.) Defendants reply that even if there was an implied right of action previously recognized by the courts, there should no longer be an such a right in light of the Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), and the Second Circuit's subsequent decision in Olmsted v. Pruco Life Ins. Co., 283 F.3d 429, 432 (2d Cir. 2002), both of which call for a critical reexamination by lower courts of implied rights of action not supported by either the text of a statute or its legislative history. (See Defendants' Reply Memorandum at 6.)

Defendants are correct that § 36(a), on its face, applies to the SEC and not to private citizens such as Plaintiffs in the instant case. Plaintiff is equally right that many federal courts have recognized implied private rights of action in § 36(a), and indeed a string of Second Circuit decisions countenance such actions. See, e.g., Tannenbaum v. Zeller, 552 F.2d 402, 417 (2d Cir.1977) (stating that § 36, both in its original form and as amended in 1970, "authorized SEC injunctive actions and, by implication, private damage actions by investors against fiduciaries who failed to meet its standards"); see also Strougo v. Scudder, Stevens & Clark, Inc., 964 F.Supp. 783, 796–97 (S.D.N.Y.1997); rev'd on other grounds, 282 F.3d 162, 171 (2d Cir.2002) (stating that courts "have long held that a private litigant may commence an action under Section 36(a)" of the 1940 Act).

In light of the Supreme Court's and the Second Circuit's decisions in Sandoval and Olmsted, Defendants urge this Court to extend the reasoning of those decisions limiting implied rights of action to § 36(a), much as Judge Pollack of the Southern District of new York recently did in In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 2003 U.S. Dist. LEXIS 14175 at *33–35 (S.D.N.Y. Aug. 19, 2003), which found that

there is no private right of action under § 34(b) of the 1940 Act. Plaintiffs warn that in doing so, Defendants are "asking this Court to be the first court anywhere to hold that there is no implied private right of action under" § 36(a). (Plaintiffs' memorandum at 20.)

In view of the conflicting arguments on this question, the Court declines, at this time, to make any sweeping judgment of law regarding the existence of private rights of action under § 36(a), because, assuming *arguendo* that such a right exists, Plaintiff in the instant case failed to fulfill the demand requirement under FED.R.CIV.P. 23.1.

### 3. *The demand requirement under FED. R.CIV.P. 23.1*

Defendants argue that Plaintiff failed to satisfy the demand requirement under § 36(a) and FED.R.CIV.P. 23.1. Rule 23.1 states, in pertinent part, that in a derivative action brought by one or more shareholders to enforce a right of (in this case) a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall, *inter alia*, allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. *Id.*

It is uncontested that Plaintiff did not file a demand upon the board of the Focus Twenty Fund. (*See* Defendants' Memorandum at 8 and Plaintiff's Memorandum at 8.) Plaintiff states that demand is futile, as the directors of the Focus Twenty Fund serve as directors of 49 Merrill Lynch funds, which in turn control 78 fund portfolios, and that these directors receive between $160–260,000 for their efforts. Plaintiff argues that "by appointing the same individual to many directorships and rewarding such individual handsomely, [Fund Asset Management] has converted the role of watchdog into that of a sinecure." (Plaintiff's Memorandum at 9.) Defendant Focus Twenty Fund, however, insists upon reserving to itself the prerogative to decide whether to sue Fund Asset Man-

agement. (*See* Reply of Defendant Merrill Lynch Focus Twenty Fund, Inc.)

As the mutual fund in question is a Maryland corporation, Maryland State law applies. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108–09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (holding that "a court that is entertaining a derivative action under [the 1940 Act] must apply the demand futility exception as it is defined by the law of the State of incorporation)." The controlling case under Maryland law is *Werbowsky v. Collomb,* 362 Md. 581, 766 A.2d 123 (2001).

■ *Werbowsky* states that the demand requirement in derivative suits is the general rule in Maryland, subject to the demand futility exception. *See id.* at 602, 134–35. The court observed that in most cases,

> a pre-suit demand on the directors is not an onerous requirement ... it gives the directors—even interested, non-independent directors—an opportunity to consider, or reconsider, the issue in dispute. It may be their first knowledge that a decision or transaction they made or approved is being questioned, and they may choose to seek the advice of a special litigation committee of independent directors, which has become a common practice, or they may decide, as a business matter, to accede to the demand rather than risk embarrassing litigation. The futility exception essentially eliminates any chance at meaningful pre-litigation alternative dispute resolution. It also virtually assures extensive and expensive judicial wrangling over a peripheral issue that may result in preliminary determinations regarding director culpability that, after trial on the merits, turn out to be unsupportable. If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard.

*Id.* at 619, 144 (footnote omitted).

The *Werbowsky* court decided that the futility exception was a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response

to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule. *Id.* On the facts of that particular case, the court held that the directors' receipt of large fees, and their desire to retain their directorships and business relationships with the company upon whose board they served, were insufficient to demonstrate demand futility. *See id.* at 622, 145–46.

■ Applying the reasoning of *Werbowsky* to the case at bar, the evidence presented by Plaintiff regarding the nine board members of the Focus Twenty Fund is not sufficient to demonstrate that the eight independent directors are so clearly conflicted or controlled as to make demand futile. Although the directors' service on the boards of 49 Merrill Lynch funds, combined with their large compensation packages, does raise questions of good corporate governance, the record presented is not enough to lead this Court to state, as a matter of law, that directors' service upon multiple boards, with significant remuneration, is enough to demonstrate the futility of a demand upon them.

As the *Werbowsky* court stated, the demand requirement is not particularly onerous, and any refusal of demand can subsequently be reviewed under the business judgment rule. The facts of this case do not give rise to an invocation of the "very limited exception" to Maryland's general rule. Defendants' motion to dismiss under Rule 23.1 is GRANTED.

As Plaintiff's suit is to be dismissed on the grounds of their failure to fulfill the demand requirement of Rule 23.1, it is unnecessary for the Court to decide Defendants' further arguments that Plaintiff failed to make sufficient allegations of personal misconduct under § 36(a), or that Plaintiff failed to plead allegations of negligence, gross negligence and negligent misrepresentation with sufficient particularity in accordance with Fed. R.Civ.P. 8(a).

### Conclusion

For the reasons stated above, Defendants' motion to dismiss is DENIED on the grounds of Rules 12(b)(6) and 8(a), but GRANTED on the ground of Rule 23.1.

SO ORDERED.