April SCALISI, as Custodian for her minor children, Felix Amsler, Plaintiffs–Appellants,

v.

FUND ASSET MANAGEMENT, L.P., Merrill Lynch Focus Twenty Fund, Inc., Defendants–Appellees,

Merrill Lynch Focus Twenty Fund, Inc. Nominal Defendant–Appellee.

Docket No. 03–9233.

United States Court of Appeals, Second Circuit.

Argued June 18, 2004.

Decided Aug. 17, 2004.

---

Scott W. Fisher, Garwin, Bronzaft, Gerstein & Fisher, L.P., New York, N.Y. (Joel C. Feffer and Daniella Quitt, Wechsler Harwood LLP, on the brief) for Plaintiffs–Appellants.

James N. Benedict, Clifford Chance U.S. LLP, (Mark Holland, Mary K. Dulka, Jennifer Wendy, Sanny B. Hua, Clifford Chance U.S. LLP; Lori A. Martin, First Vice President and Assistant General Counsel, Merrill Lynch Investment Managers L.P., of counsel), for Defendant–Appellee Fund Asset Management, L.P.

Marvin E. Barkin, Trenam, Kemker, Schars, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL (Thomas J. Lilly, Jr., O'Donnell, Schwartz, Glanstein & Lilly, Garden City, NJ, on the brief) for Defendant–Appellee Merrill Lynch Focus Twenty Fund, Inc.

Before: LEVAL, and B.D. PARKER, Circuit Judges, IRENAS, Senior District Judge *.

IRENAS, Senior District Judge.

Plaintiffs April Scalisi and Felix Amsler appeal a decision of the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., *District Judge* ) dismissing their shareholder derivative action against Defendants Fund Asset Management, L.P. and Merrill Lynch Focus Twenty Fund, Inc. Plaintiffs contend that the district court failed to apply the proper legal standard in determining whether the directors of a mutual fund lacked sufficient independence to render demand upon them futile. We conclude that the district court applied the proper legal standard and correctly held that Plaintiff's Complaint should be dismissed. Accordingly, we affirm.

**I**

Plaintiffs in this matter are shareholders in Merrill Lynch Focus Twenty Fund, Inc. ("MLF"). MLF is a Maryland corporation registered as an "investment company" under the Investment Company Act of 1940

---

* The Honorable Joseph E. Irenas, United States District Judge for the District of New Jersey, sitting by designation.

("ICA"). 15 U.S.C. § 80a–1 *et seq.*[1] MLF is one of a complex of funds managed and advised by Defendant, Fund Asset Management, L.P. ("FAM"), a Merrill Lynch and Company, Inc. ("ML") controlled entity.

MLF has a nine-member board of directors. Each of MLF's assertedly independent directors sits on the boards of 49 funds managed by FAM and each is paid between $160,000 to $260,000 yearly for his or her service as a director of those funds. On October 21, 2002, Plaintiff April Scalisi[2] instituted a derivative action for the benefit of MLF against FAM in the United States District Court for the Eastern District of New York.[3] The two-count Complaint alleges: (1) breach of fiduciary duties under ICA § 36(a)[4]; and (2) negligence, gross negligence and negligent misrepresentation. Specifically, Plaintiffs allege that FAM, with actual or imputed knowledge of improprieties within the Enron Corporation ("Enron"), caused MLF to purchase a large block of Enron stock which subsequently became valueless when those improprieties were made public.[5]

1. Section 80a–3 defines an investment company as:

any issuer which—

(A) is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities;

(B) is engaged or proposes to engage in the business of issuing face-amount certificates of the installment type, or has been engaged in such business and has any such certificate outstanding; or

(C) is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 per centum of the value of such issuer's total assets (exclusive of Government securities and cash items) on an unconsolidated basis.

2. On January 31, 2003, pursuant to Fed. R.Civ.P. 42(a) the case was consolidated for all purposes with a separate suit brought by Plaintiff Felix Amsler (Docket No. 02–CV–6367, E.D.N.Y).

3. MLF was joined as a nominal defendant.

4. ICA § 36(a), 15 U.S.C. § 80a–35(a), provides, in relevant part:

The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts—

(1) as officer, director, member of any advisory board, investment adviser, or depositor; or

(2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a–1(b) of this title.

Defendants argue that § 36(a) does not create a private right of action because the express language of § 36(a) only authorizes the Securities and Exchange Commission ("SEC") to bring an action under the statute. However, because we find Plaintiffs failed to sufficiently plead demand futility under Fed. R.Civ.P. 23.1, we decline to reach this issue.

5. Although at one time Enron was "the nation's largest natural gas and electric marketer with a reported annual revenue of more than $150 billion" and had stock valued at $80.00 a share, the company was forced to file for bankruptcy on December 2, 2001, after details of its fraudulent activities were made public. SEC Compl.(S.D. Tex., Docket No. H–03–0946 (Hoyt)) ¶ 13.

*See In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*, 218 F.R.D. 377, 378 (E.D.N.Y.2003). As a result, MLF suffered economic damages. *Id.* Prior to filing suit, Plaintiffs did not make a demand on the MLF board that MLF bring the suit; rather, Plaintiffs allege in their Complaint that such a demand would be futile because the MLF directors are "interested persons" under the ICA and, thus, not independent. Pl. Compl. at 7–17. Subject matter jurisdiction in the district court was proper pursuant to 15 U.S.C. § 80a–43 and 28 U.S.C. §§ 1331 and 1367.

On September 24, 2003, Defendants moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 8(a), 12(b)(6) and 23.1. The district court heard oral argument on October 3, 2003, and on October 30, 2003, issued an opinion denying Defendants' Rule 8(a) and Rule 12(b)(6) motions, but granting Defendants' motion pursuant to Rule 23.1. The court held that dismissal of Plaintiffs' Complaint was proper for "their failure to fulfill the demand requirement." *In re Merrill Lynch*, 218 F.R.D. at 381. Plaintiffs filed their notice to appeal to this Court on November 7, 2003. Jurisdiction is proper pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we affirm.

## II

■ When reviewing a district court's decision to grant a motion to dismiss, we view the facts in the light most favorable to the non-moving party. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 293 (2d Cir.2003); *Abramson v. Pataki*, 278 F.3d 93, 97 (2d Cir.2002); *Comer v. Cisneros*, 37 F.3d 775, 786 (2d Cir.1994). However, we are not required to accept as true the legal conclusions or unwarranted deductions of fact drawn by the non-moving party. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994); 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[1][b] (3d ed.2004).

■ We have said that where "determination of the sufficiency of allegations of futility depends on the circumstances of the individual case," the standard of review for dismissals based on Fed.R.Civ.P. 23.1 is abuse of discretion. *Kaster v. Modification Sys.*, 731 F.2d 1014, 1018 (2d Cir. 1984); *see also Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir.1983); *Elfenbein v. Gulf & W. Indus., Inc.*, 590 F.2d 445, 450–51 (2d Cir.1978). However, where a challenge is made to the legal precepts applied by the district court in making a discretionary determination, plenary review of the district court's choice and interpretation of those legal precepts is appropriate.[6] *See, e.g., Fama v. Comm'r of Corr. Serv.*, 235 F.3d 804, 808 (2d Cir.2000); *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir.1992).

---

6. The abuse of discretion standard referred to in *Elfenbein, Lewis* and *Kaster* is puzzling. As we see it, when a trial court rules on the legal sufficiency of a complaint the question presented should be one of law. When an appellate court reviews such a ruling, review should be *de novo*. The highest courts of Delaware and New Jersey have so held. *See Brehm v. Eisner*, 746 A.2d 244, 253 (Del.2000) (adopting de novo review for motions to dismiss for insufficient allegations of demand futility under analogous Delaware Chancery Court Rule 23.1); *In re PSE & G Shareholder Litig.*, 173 N.J. 258, 801 A.2d 295, 313 (2002) (following *Brehm*). We recognize, however, that we need not decide the issue in this case, as we would reach the same conclusion under either standard. We offer these comments to be considered if our Court confronts a case in which the standard selected might affect the outcome.

## III

 A derivative suit "permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Serv.*, 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (citing *Ross v. Bernhard*, 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)) (emphasis in original). Thus, a derivative action permits an individual shareholder to "protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* at 95–96, 111 S.Ct. 1711 (citing *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)); *see also* 13 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* §§ 5939, 5940 (perm.ed., rev.vol.2004) (describing a derivative claim as "an equitable device" which developed "to enable shareholders to enforce a corporate right . . . that the corporation had either failed or refused to assert on its own behalf").[7]

 Concerned about the potential for abuse of the remedy, however, "equity courts established as a precondition 'for the suit' that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Kamen*, 500 U.S. at 95–96, 111 S.Ct. 1711 (citing *Ross*, 396 U.S. at 534, 90 S.Ct. 733).

"Thus, in the usual case, a shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." 13 Fletcher § 5963; *see also Kamen*, 500 U.S. at 102 n. 7, 111 S.Ct. 1711 (noting that "[a]ll States require that a shareholder make a precomplaint demand on the directors" yet most also excuse demand in limited circumstances). However, demand may be excused where a shareholder is able to show that demand would be futile. 13 Fletcher § 5965; *Kamen*, 500 U.S. at 102, 111 S.Ct. 1711. The specifics of what constitutes futility vary from state to state. *See* 13 Fletcher § 5965 (indicating that demand may be deemed futile "if it would be directed to individuals who, by reason of hostile interest or participation in the alleged wrongdoing, cannot be expected to institute litigation on behalf of the corporation").

 The substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief. *See Kamen*, 500 U.S. at 108–09, 111 S.Ct. 1711. Because MLF is a Maryland corporation, Maryland law applies to the futility analysis.[8]

Maryland's requirements for a viable claim of demand futility are set forth in

---

7. A derivative action is "based upon two distinct wrongs: (1)[t]he act whereby the corporation was caused to suffer damage, and (2) the act of the corporation itself in refusing to redress the said act." *Druckerman v. Harbord*, 174 Misc. 1077, 22 N.Y.S.2d 595, 597 (N.Y.Sup.1940).

8. Although many states have statutes which in whole or in part cover derivative actions, Maryland does not. However, Maryland courts recognize derivative actions even in the absence of a specific statute or court rule. *Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d

123, 135 (2001) (noting that, in Maryland, the shareholder derivative action "retains its common law status" even though "in much of the country [ ] it is governed by statutes"); *see also McCully v. Radack*, 27 Md.App. 350, 340 A.2d 374, 379 n. 11 (Md.1975) (finding it "beyond question" "[t]hat corporate derivative or representative suits may be maintained" in Maryland); *Parish v. Md. & Va. Milk Producers Ass'n*, 250 Md. 24, 242 A.2d 512 (1968); *Eisler v. E. States Corp.*, 182 Md. 329, 35 A.2d 118 (1943); 13 Fletcher § 5942.85.

the Maryland Supreme Court's decision in *Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d 123 (2001). The *Werbowsky* court, emphasizing the importance of the demand requirement, explicitly noted that demand futility is

> a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation,[9] or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

766 A.2d at 144.

## IV

■ Plaintiffs challenge the district court's reliance on *Werbowsky* and argue that "[w]hen applied to registered investment companies, the Maryland law of demand is different than when applied to business corporations" such as the entity involved in the *Werbowsky* case. Br. Pls.-Appellants at 19. Noting that under Maryland law, Md.Code. Ann. Corps. & Ass'ns § 2–405.3, a director of an ICA registered investment company is "independent" if he is not an "interested person" as defined by the ICA,[10] Plaintiffs argue that the inverse is also true—that a director is not independent if he is an "interested person" within the definition of the ICA. Drawing from ICA § 80a–2(a)(19)(A)(I), which defines an interested person as an "affiliated person" of the company, ICA § 80a–2(a)(3)(C), which defines an affiliated person as "any person directly or indirectly controlling, controlled by, or under common control with" the investment company,[11] and ICA § 80a–2(a)(9), which defines "control" as the "power to exercise a controlling influence over the management or policies of a company ...," Plaintiffs argue that all the directors of MLF are controlled by FAM and ML by virtue primarily of the very large director's salaries paid to them as the result of their having been selected by ML to serve as directors of its managed funds. According to Plaintiffs' argument, the directors for those reasons are interested persons under the ICA,[12] and thus by definition fail the test of Maryland law, § 2–405.3, for independence—with the consequence that demand upon them is excused for futility.

The problem with Plaintiffs' argument is that no authority for it can be found in

9. Plaintiffs do not claim that delay would cause irreparable harm. Therefore, we focus solely on the question of whether a majority of the MLF directors are so conflicted or committed to the decision to purchase Enron stock that "cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky*, 766 A.2d at 144.

10. This particular statute is not directed specifically to derivative actions (because Maryland has no statute or court rule governing such actions), but rather to related party transactions or other issues under state corporate law.

11. Although not clear from the brief, Plaintiff appears to be arguing the "common control" prong of the definition since it does not seem that these directors either control or are controlled by MLF. The theory seems to be that the directors and MLF are both controlled by some ML entity.

12. The ICA contains a presumption that "[a] natural person shall be presumed **not** to be a controlled person." 15 U.S.C. § 80a–2(a)(9) (emphasis added). Although this presumption "may be rebutted by evidence," it continues "until a determination to the contrary [is] **made by the Commission**...." *Id.* (emphasis added).

Maryland law. Although § 2–405.3 classifies as "independent" a director who is not "interested" under the ICA, this by no means suggests that every person who is "interested" under the ICA should be found to fail Maryland's test for independence. Furthermore, the test Plaintiffs propose would be inconsistent with *Werbowsky.* We find neither statutory nor decisional authority of Maryland that supports Plaintiffs' argument that the "interested" status of directors under the ICA is sufficient reason to excuse the demand requirement. *Werbowsky* sets forth at length Maryland's standards for determining whether demand on a corporation's directors is excused. We see no reason to believe that Maryland would depart from those standards in the case of a registered investment company. Nothing in *Kamen,* which involved a Maryland mutual fund registered under the ICA, suggests support for Plaintiffs' argument. We accordingly view the *Werbowsky* framework as governing and will use it to review the district court's determination that the Complaint fails to plead adequately that demand was excused by reason of futility.

### V

■ *Werbowsky* made clear that the demand requirement is an important device in preventing minority shareholders from controlling corporate litigation against the interests of the corporation and the judgment of the directors. *See* 766 A.2d at 144. It characterized the futility exception as a narrow one. After reviewing a significant trend towards eliminating the futility exception entirely and requiring demand in all cases, the court chose to "adhere, for the time being, to the futility exception, but, consistent with what appears to be the prevailing philosophy throughout the country, [to] regard it as a very limited exception." *Id.*

Maryland law does not support Plaintiffs' argument that, because the MLF directors were appointed by ML, they had a powerful self-interest not to authorize a suit by MLF against an ML entity for fear they would lose their highly remunerative positions. In *Werbowsky,* the plaintiffs had alleged that "the directors ... received substantial compensation as board members and ... had an incentive to appease [the majority shareholder and beneficiary of the challenged transaction] in order to maintain their position on the board." *Id.* at 129. The court refused to excuse demand "simply because a majority of the directors ·... are conflicted or are controlled by other conflicted persons, or because they are paid well for their services as directors, were chosen as directors at the behest of controlling stockholders, or would be hostile to the action." *Werbowsky,* 766 A.2d at 143–44.[13]

---

**13.** Compare *In re eBay Shareholders Litig.,* 2004 WL 253521 (Del.Ch. Feb.11, 2004) in which eBay shareholders alleged usurpation of a corporate opportunity by three (of seven) current directors and one former director, who as a group "ha[d] the ability to control eBay and to direct its affairs and business, including the election of directors, ..." *Id.* at *3. The four non-defendant directors, upon demand, would have had to consider whether to sue the defendants, including three of their co-board members. Each of the four had unvested options and the expectation of new options under eBay's director's stock option plan. Vesting or receipt of such options would occur only if they retained their positions as directors. *Id.* at *2. Applying Delaware law, the court excused as futile the plaintiffs' failure to make demand: "Given that the value of the options ... potentially run[s] into the millions of dollars, one cannot conclude realistically that [a non-defendant director] would be able to objectively and impartially consider a demand to bring litigation against those to whom he is beholden for his current position and future position on eBay's board." *Id.* at *3.

*Werbowsky's* firm adherence to the importance of the demand requirement even · when a director "would be hostile to the action," its insistence that the requirement is rarely excused on grounds of futility, and its express denigration of the best reason Plaintiffs have proffered for finding futility, lead us to conclude that Plaintiffs' allegations of futility would not satisfy the standards of Maryland law to excuse the demand requirement.

■ Nor do the other allegations in the Complaint satisfy the requirements of *Werbowsky* that demand be excused only where "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky,* 766 A.2d at 144; *see also* 13 Fletcher § 6008 (noting that "[g]eneral or inferential allegations that the directors are dominated by the defendants or that they have common interests and are friendly towards defendants will not be sufficient to show demand futility").

The Complaint alleges that it was impossible for the directors to effectively review FAM's actions or recommendations because the directors sit on so many boards, and have so many other outside commitments, that they can only act as a rubber stamp for FAM decisions. *Werbowsky,* however, emphasized the significant value of pre-suit demand in allowing "directors—even interested, non-independent di-

rectors—an opportunity to consider, or reconsider, the issue in dispute," *id.* at 144, and to seek resolutions other than expensive litigation, or even to accede to the demand. The Complaint suggests no reason why the MLF directors, who like numerous others in the Enron glory days may have thought Enron was a good investment, would be committed to defending the purchase of Enron stock.[14] It provides no specific information relating the directors' conduct to the challenged decision to invest in Enron. And beyond the issue of compensation discussed above, nothing in the Complaint suggests that the MLF directors would not have been willing to explore the possibility of litigation against FAM.[15]

■ In addition to allegations regarding the MLF directors' appointment, compensation and workload, the Complaint also relies on general criticisms of the investment company industry. These allegations are neither specific to the MLF directors nor to the purchase of the Enron stock at issue. For example, the Complaint points to: (1) a 1998 interview given by John C. Bogle, the founder of The Vanguard Group, broadly criticizing the structure of mutual fund industry fees and expenses; (2) a statement made by Warren Buffet generally criticizing investment company governance; (3) the Fund Director's Guidebook, published by an ABA Task Force, voicing concerns regarding director workloads; (4) a generalized attack

14. In fact, it can be argued that a claim that the directors are overworked actually supports the need for demand, rather than provides a means to circumvent the requirement. Where directors are faced with a large number of decisions or recommendations needing approval, it is certainly possible that they may approve actions that, upon further reflection, they would wish to revisit. Rather than assuming that being overworked equals being conflicted or committed to a decision, an equally (if not more) persuasive argument exists for the assumption that being overworked means that directors are less committed to individual decisions and may be more willing to revisit them given the opportunity.

15. We do not suggest any view as to whether such litigation would, or would not, be in the best interests of MLF and its shareholders.

on MLF's expense ratios based on a comparison to two other entities, The Vanguard Group and Fidelity Investments,[16] and a general critique of expense ratios published in Forbes Magazine in 2002; and (5) former SEC chairman Arthur Levitt's critique of the practice of mutual funds paying dues to the Investment Company Institute. Pl. Compl. at 12–17. Although it may (or may not) be that, as a matter of public policy, the law does not adequately create a layer of independent authority between mutual funds and their sponsors, those generalized allegations do not suffice under Maryland's *Werbowsky* standard to justify excusing a demand on this particular board in the case before us on grounds of futility.

In our view, the district court correctly concluded that the allegations of the Complaint failed to assert facts that would excuse the requirement of Maryland law for a pre-suit demand on the board of directors.

## CONCLUSION

We affirm the judgment of the district court.

**16.** Plaintiffs have failed to convince this Court, however, that the expense ratios of these two entities are appropriate yardsticks by which to evaluate MLF expense ratios as Plaintiffs provide no information as to (I) the operation or size of Vanguard or Fidelity, or (ii) expense ratios generally prevalent in the mutual fund industry for similarly situated funds.