11-1767-cv
Kautz v. Sugarman

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect.  Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1.  When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.**

> At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21ˢᵗ day of November, two thousand eleven.

PRESENT:

> AMALYA L. KEARSE,
> JOSEPH M. MCLAUGHLIN,
> JOSÉ A. CABRANES,
> *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JAMES KAUTZ, *derivatively on behalf of iStar Financial Incorporated,*

> *Plaintiff-Appellant,*

> -v.-                                                         No. 11-1767-cv

JAY SUGARMAN, GLENN AUGUST, ROBERT W. HOLMAN, JR., ROBIN JOSEPHS, JOHN G. MCDONALD, GEORGE R. PUSKAR, DALE ANNE REISS, JEFFREY A. WEBER, NICHOLAS A. RADESCA, CATHERINE D. RICE, TIMOTHY J. O'CONNOR,

> *Defendants-Appellees,*

ISTAR FINANCIAL INCORPORATED,

> *Nominal Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR APPELLANT:**                                      BRETT D. STECKER (Robert B. Weiser, Jeffrey J. Ciarlanto, Joseph M. Profy, The Weiser Law Firm, P.C., Wayne, PA, *on the brief*; Robert I. Harwood, Daniella Quitt, Harwood Feffer LLP, New York, NY, *of counsel*), The Weiser Law Firm, P.C., Wayne, PA.

**FOR APPELLEES:**                                      SCOTT B. SCHREIBER (Andrew T. Karron, Kavita Kumar Puri, *on the brief*), Arnold & Porter LLP, Washington, D.C., *for defendants-appellees Sugarman, August, Holman, Josephs, McDonald, Puskar, Reiss, Weber, Radesca, Rice, and O'Connor.*

DAVID A. KISTENBROKER (Carl E. Volz, Aharon S. Kaye, *on the brief*), Katten Muchin Rosenman LLP, Chicago, IL, *for nominal defendant-appellee iStar Financial Inc.*

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

Plaintiff-appellant James Kautz appeals from a judgment granting defendants-appellees' motion to dismiss his derivative securities class action complaint for failure to make a pre-suit demand as required by Fed. R. Civ. P. 23.1. *See Kautz v. Sugarman*, No. 10 Civ. 3478, 2011 WL 1330676 (S.D.N.Y. Mar. 31, 2011) ("*Kautz I*"). We assume the parties' familiarity with the underlying facts and the procedural history of this case.

This appeal arises out of two parallel shareholder derivative complaints filed in the Southern District of New York for the benefit of Nominal Defendant iStar Financial Inc. ("iStar") against current and former iStar directors and officers for breaches of fiduciary duties, waste of corporate assets, unjust

2

enrichment, and related claims. Kautz did not make pre-suit demand on iStar, electing instead to plead demand futility in his complaint. He alleged that demand was futile for four reasons: (1) the Board of Directors (the "Board") had already rejected the demand of another alleged shareholder (that of Addie Vancil, the plaintiff in the parallel derivative suit) (the "Vancil Demand") and therefore no reasonable shareholder would believe that the Board would consider another pre-suit demand in good faith; (2) three of the directors were members of iStar's audit committee during the relevant period, and therefore had participated in the alleged misconduct that formed the factual basis for the derivative suit; (3) one of the directors, Robert Sugarman, was also the Chief Executive Officer of iStar and therefore lacked independence; and (4) several of the director defendants had participated in a decision to permit three of iStar's executives who might have otherwise been implicated in the alleged wrongdoing to retire or resign, rather than being fired for cause. *See* Amended Complaint ("Am. Compl.") ¶ 151, *Kautz I*, 2011 WL 1330676, No. 10 Civ. 3478 (S.D.N.Y. June 28, 2010).

On August 13, 2010, defendants moved to dismiss both the Kautz complaint and the Vancil complaint, arguing that Kautz had failed to plead demand futility and that both Vancil and Kautz had failed to state a claim on which relief can be granted. In Kautz's memorandum in opposition to the defendants' motion to dismiss, he argued that his allegation that the directors had improperly permitted several iStar executives to retire or resign necessarily gave rise to an inference that those directors had also executed mutual releases with the departing executives. Those directors, according to Kautz, would therefore face significant personal financial liability should the executives be found to have engaged in wrongdoing, and therefore could not be relied upon to address his demand in good faith. Accordingly, he argued, demand on those directors (who, not incidentally, comprised a majority of the Board) was excused. *See Kautz I*, 2011 WL 1330676, at *10.

The District Court consolidated the two cases for argument and made several rulings in a joint opinion, only two of which are relevant to us today. First, the court held that the Board's negative response to the Vancil Demand did not excuse the requirement that Kautz make his own pre-suit demand. *Id.* at *8. Second, it found that Kautz had failed to allege the existence of mutual releases

3

between the directors and the departed executives. *Id.* at *10. The court granted the motion to dismiss as against Kautz and directed that the case be closed.[1] *Id.* at *10–11.

On appeal, Kautz argues that the court erred by failing to consider the Board's treatment of the Vancil Demand to be a relevant factor in its analysis of Kautz's allegation of demand futility. He further argues that the court erred in holding that he had not sufficiently alleged the existence of mutual releases between certain of the Board members and iStar. We address the court's two rulings in turn.

DISCUSSION

A. *Standard of Review*

Where a "challenge is made to the legal precepts applied by the district court in making a discretionary determination," we review the court's conclusions *de novo*. *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 137 (2d Cir. 2004). However, where the District Court's "determination of the sufficiency of allegations of [demand] futility depends on the circumstances of the individual case," we have theorized that we may review its rulings for abuse of discretion. *Id.* (internal quotation marks omitted). We decline to address here what seems to be an open question of the appropriate standard of review in demand futility cases, *see id.* at 137 & n.6, because our ruling today would be required under either standard.

B. *Demand Futility*

A derivative suit "permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (emphasis and internal quotation marks omitted). Rule 23.1 of the Federal Rules of Civil Procedure requires that any person seeking to bring a derivative suit against a company must first demand that the company's board of directors take remedial action on behalf of the company. That person must then plead with particularity his "effort . . . to obtain the desired action from the directors . . . [and] the reasons for not obtaining the action." Fed. R. Civ. P. 23.1(b)(3). If the person deems

---

[1] Vancil's complaint was not dismissed and is currently the subject of limited discovery pursuant to the District Court's order. *See Kautz I*, 2011 WL 1330676, at *10.

4

demand to be futile, he must plead with particularity his "reasons for . . . not making the effort." *Id.* Demand futility is evaluated under the law of the state of the company's incorporation, *Kamen*, 500 U.S. at 108–09, which in this case is Maryland.

Under Maryland law, a plaintiff alleging demand futility must plead and prove that "a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001);[2] *see Waller v. Waller*, 49 A.2d 449, 453 (Md. 1946). This exception to the demand rule is "a narrow one." *Scalisi*, 380 F.3d at 140; *see Werbowsky*, 766 A.2d at 144 (futility based on director conflict is "a very limited exception" to the demand rule). Accordingly, demand is rarely, if ever, properly excused under Maryland law. *See Washtenaw Cnty. Emps. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*, No. 07-cv-862, 2008 WL 2302679, at *14 & n.6 (N.D. Ga. Mar. 31, 2008) (collecting cases and noting that, since *Werbowsky* and as of 2008, only one court in the country had found demand to be futile when applying Maryland law).

C.    *Demand was not Excused by the Board's Response to the Vancil Demand*

Several months before Kautz filed his complaint, Vancil made her demand upon the Board and was rebuffed for reasons that are not before us today. *See Kautz I*, 2011 WL 1330676, at *1–2. Kautz accordingly alleged that his demand was excused because, given the Board's "shocking response (or lack thereof)" to the Vancil Demand, he could not rely upon the Board to respond to his own demand in good faith. *Id.* at *8. The District Court rejected this argument, holding that under Delaware law, to which Maryland's courts oftimes look for guidance,[3] "the board's response to one derivative plaintiff

---

[2] The second exception to the pre-suit demand requirement, inapplicable here, permits a plaintiff to skip pre-suit demand where "demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation." *Werbowsky*, 766 A.2d at 144.

[3] The parties do not dispute that Maryland courts give great weight to Delaware law where their own courts have not addressed a particular issue of securities litigation. *See Kramer v. Liberty Prop. Trust*, 968 A.2d 120, 134 (Md. 2009). Neither do the parties dispute that no Maryland court has ever addressed the issue of whether the rejection of one demand can excuse future demands by unrelated persons. The District Court therefore correctly looked to Delaware law to resolve this issue, as do we.

cannot form the basis for an assertion of demand futility by another." *Id.* Kautz alleges that this conclusion was erroneous. We disagree.

As noted by the District Court, "it is well settled [in Delaware] that the board's response to one derivative plaintiff cannot form the basis for an assertion of demand futility by another." *Kautz I*, 2011 WL 1330676, at *8; *see Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 n.2 (Del. 1988) ("Plaintiffs cannot effectively rely on an earlier demand made by another . . . shareholder."); *Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989); *Maurer v. Johnson*, Civ. A. No. 9725, 1989 WL 997172, at *1 (Del. Ch. May 12, 1989) ("Plaintiffs' argument . . . that demand by these plaintiffs would be futile 'on its face' because of the Board's rejection of a prior demand based on the same transaction[] is without merit. If such were the case, any two shareholders could convert a 'demand rejected' derivative cause of action into one for which demand was excused."). Kautz does not point to a single case in which demand is excused as against one plaintiff because an unrelated plaintiff earlier made an unsuccessful demand. We decline to create such a rule out of whole cloth, and find that Kautz's first assignment of error is meritless.[4]

D.     *Kautz did not Establish the Existence of Mutual Releases*

Kautz also argued before the District Court that some or all of iStar's directors would face personal financial liability from a shareholder derivative suit because, he claimed, they had executed mutual releases with the departed executives. *See Kautz I*, 2011 WL 1330676, at *10. He now alleges that the District Court erred in finding that he had not sufficiently pleaded the existence of those mutual releases. Although Kautz correctly states that the District Court must accept all well-pleaded facts in the complaint as true, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002), this second assignment of

---

[4] Kautz argues that it is not the mere fact of the prior demand's rejection, but the manner in which the Board evaluated that demand, that excuses his own demand obligation. But the body of law governing the reasonableness of boards' responses to demands is separate from the body of law addressing demand futility. As we note above, Kautz has not brought to our attention any case in which a board's prior conduct toward a demanding shareholder has excused demand on the part of a later shareholder, regardless of the manner in which the board responded to the earlier demand. Neither have we found such a case—presumably for the simple reason that the two standards are entirely separate and distinct. *See Maurer*, 1989 WL 997172, at *1 (Del. Ch. May 12, 1989) (burden of proving that the board's denial of earlier demand was improper lay on earlier party who had actually made demand, not on plaintiffs who sought to excuse demand); *see also Kautz I*, 2011 WL 1330676, at *8.

error suffers from a fatal problem: Kautz does not in fact plead the existence of these alleged releases in his complaint. *See* Am. Compl. ¶ 151 (setting out six sub-paragraphs that allegedly explain why a demand on the Board "would be a futile, wasteful and useless act"). In three nearly-identical footnotes, Kautz alleged that "[t]ypically, when an executive of a public company resigns or retires, that executive enters into an agreement pursuant to which the executive, *inter alia*, is released from certain claims." Am. Compl. ¶ 124 n.4 (identical text in nn.5–6). However, Kautz's complaint continued, "upon information and belief, it has not been disclosed in iStar's public filings" whether any of the three departing executives "executed such a release in connection with" their departures. *Id.* (identical text in nn.5–6). As the District Court noted, "the pleadings allege no facts to support the existence of mutual releases between iStar and the departing Defendants," *Kautz I*, 2011 WL 1330676, at *10*, but merely a string of speculations. *See id.*[5]

Nevertheless, even if Kautz had properly pleaded the existence of the alleged mutual releases, we would not question the considered judgment of the District Court in the circumstances presented here.[6] Under Maryland law, the mere fact that a director may have a financial interest that would be harmed if an investigation goes forward does not render that director so "personally and directly conflicted" as to excuse demand. *Scalisi*, 380 F.3d at 139–40; *see Werbowsky*, 766 A.2d at 143 (demand not excused when directors earn lucrative fees from their positions and might perceive demand as threatening those positions); *In re Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186, 2005 WL 2509732, at *3 (S.D.N.Y. Oct. 11, 2005) (allegation that "directors would be required to sue themselves and their fellow directors"

---

[5] Even if we were to accept as a well-pleaded fact that it is common for corporations and their directors to execute mutual releases with departing executives, Kautz has provided no facts that might suggest that iStar and its Board adhered to this "customary" practice. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1950 (2009) (internal punctuation and quotation marks removed) (citing Fed. R. Civ. P. 8(a)(2)).

[6] We address this counter-factual in acknowledgment of Maryland's express limitation of the scope of the demand futility inquiry: Courts are to focus on "the real, limited, issue—the futility of a pre-suit demand—and avoid[] injecting into a preliminary proceeding issues that go more to the merits of the complaint—whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the decision or transaction under attack." *Werbowsky*, 766 A.2d at 144.

7

insufficient under Maryland law to excuse demand); *Sekuk Global Enters. Profit Sharing Plan v. Kevenides*, Nos. 24-C-03-007496, 24-C-03-007876, 24-C-03-008010, 2004 WL 1982508, at *8–9 (Md. Cir. Ct. May 25, 2004) (rejecting argument that uninsured directors' potentially "ruinous" financial liability excused demand). Kautz's assertion that some or all of the directors have signed mutual releases, and therefore might face significant financial liability should the suit go forward, simply cannot excuse him from complying with Maryland's extremely strict demand requirement.

CONCLUSION

We have considered all of Kautz's arguments on appeal and find them to be without merit. Neither the Board's rejection of the Vancil Demand nor its alleged mutual release agreements with the departed executives rendered demand futile. Kautz's complaint therefore does not comport with the requirements of Fed. R. Civ. P. 23.1 and must be dismissed.

Accordingly, without necessarily commenting on every aspect of the District Court's thorough and well-reasoned Memorandum and Order of March 31, 2011, we AFFIRM the judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court