14-4516-cv
*Cent. Laborers' Pension Fund v. Dimon*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of January, two thousand sixteen.

PRESENT:    JOSÉ A. CABRANES,
                     BARRINGTON D. PARKER,
                                         *Circuit Judges.*[*]

---

CENTRAL LABORERS' PENSION FUND AND
STEAMFITTERS LOCAL 449 PENSION FUND,
DERIVATIVELY ON BEHALF OF JPMORGAN CHASE &
CO.,

              *Plaintiffs-Appellants,*

                    v.                                                          No. 14-4516-cv

JAMES DIMON, LINDA B. BAMMANN, JAMES A. BELL,
CRANDALL C. BOWLES, STEPHEN B. BURKE, JAMES S.
CROWN, TIMOTHY P. FLYNN, LABAN P. JACKSON,
MICHAEL A. NEAL, LEE R. RAYMOND, WILLIAM C.
WELDON, WALTER V. SHIPLEY, AND ROBERT I. LIPP,

              *Defendants-Appellees,*

---

[*] Judge Raymond J. Lohier was initially assigned to this matter and subsequently recused himself. Pursuant to this Court's Internal Operating Procedure E, after a matter has been assigned to a three-judge panel, if for any reason a panel judge ceases to participate in consideration of the matter, the two remaining judges may decide the matter if they are in agreement.

1

JPMORGAN CHASE & CO., A DELAWARE
CORPORATION,

*Nominal Defendant-Appellee.*

---

**FOR PLAINTIFFS-APPELLANTS:**

DOUGLAS WILENS (Samuel H. Rudman, David A. Rosenfeld, Mark S. Reich, Alan I. Ellman, and Benny C. Goodman III, *on the brief*), Robbins Geller Rudman & Dowd LLP, Boca Raton, FL, Melville, NY, and San Diego, CA.

John T. Long, Cavanagh & O'Hara, Springfield, IL.

**FOR DEFENDANTS-APPELLEES:**

JOHN F. SAVARESE (Emil A. Kleinhaus, *on the brief*), Wachtell, Lipton, Rosen & Katz, New York, NY, *for* defendants-appellees James Dimon, Walter V. Shipley, Robert I. Lipp, and nominal defendant-appellee JPMorgan Chase & Co.

Stuart J. Baskin and Jaculin Aaron, Shearman & Sterling LLP, New York, NY, *for* defendants-appellees Linda B. Bammann, James A. Bell, Crandall C. Bowles, Stephen P. Burke, James S. Crown, Timothy P. Flynn, Laban P. Jackson, Michael A. Neal, Lee R. Raymond, and William C. Weldon.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiffs Central Laborers' Pension Fund and Steamfitters Local 449 Pension Fund appeal from the District Court's July 23, 2014 judgment dismissing their derivative action, which action plaintiffs had filed against defendants James Dimon, Chief Executive Officer of nominal defendant JPMorgan Chase & Co. ("JPMorgan") and Chairman of its Board of Directors (the "Board"); ten other members of the Board; and two former corporate officers and advisers. *See Cent. Laborers' Pension Fund v. Dimon*, No. 14-CV-1041 (PAC), 2014 WL 3639185 (S.D.N.Y. July 23, 2014).

Plaintiffs' action arises out of the infamous Ponzi scheme orchestrated by Bernard L. Madoff ("Madoff") through the investment advisory unit of Bernard L. Madoff Investment Securities LLC ("BMIS"). *See* Pls.' Br. 2. Plaintiffs allege that "JPMorgan served as the primary banker for BMIS for more than 20 years, with billions of dollars of investor funds flowing through the BMIS account," and that, "through its various business operations, [JPMorgan] gained considerable insight into Madoff's operations, but ignored glaring 'red flags' of suspicious and illicit misconduct associated with Madoff and the BMIS account." *Id.* at 2–3. According to plaintiffs, "rather than put a stop to Madoff's fraud, JPMorgan turned a blind eye to it, allowing [JPMorgan] to maintain a lucrative relationship with this large and important customer." *Id.* at 3. Plaintiffs claim "that responsibility for JPMorgan's criminal conduct lies with defendants," *id.*, in part because "the Board[ ] breach[ed] [its] fiduciary duty of loyalty [by] fail[ing] to properly oversee [JPMorgan's] operations," *id.* at 4.

The District Court dismissed plaintiffs' complaint on the ground that they "failed to allege with particularity facts sufficient to excuse [their] failure to make demand upon the Board prior to filing" their action, as required by Rule 23.1 of the Federal Rules of Civil Procedure. *Cent. Laborers' Pension Fund*, 2014 WL 3639185, at *1. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Before proceeding to the merits, we address amicus's contention that, because "the district court should have dismissed the present case for lack of subject matter jurisdiction," we too lack jurisdiction on appeal. *See* Amicus Br. 1. Amicus advances two arguments in support of this position. "First, the single jurisdiction[-]conferring federal claim was so insubstantial as to deprive the [District] [C]ourt of jurisdiction. In the alternative, because the [District] [C]ourt dismissed plaintiff[s'] sole federal law cause of action at the pleadings stage, [it] should have refrained from exercising supplemental jurisdiction over the state law breach of fiduciary duty action." *Id.*

In amicus's first argument, he asserts that, because the District Court determined that plaintiffs failed to adequately plead elements of their federal claim under Section 14(a) of the Securities Exchange Act of 1934—a determination, it should be noted, that plaintiffs do not challenge in the instant appeal—the claim was "insufficient to conjure up federal jurisdiction." *Id.* at 8. It is true that "[s]imply raising a federal issue in a complaint will not automatically confer federal question jurisdiction. Rather, we ask whether the cause of action alleged is *so patently without merit* as to justify the court's dismissal for want of jurisdiction." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (alterations and internal quotation marks omitted) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 70 (1978)); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 n.3 (2009) ("Federal courts lack subject-matter jurisdiction when an asserted federal claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." (internal quotation marks omitted)). Plaintiffs' Section 14(a) claim, however, clears this "low bar," and federal question jurisdiction

therefore was not lacking. *Cf. Shapiro v. McManus*, 136 S. Ct. 450, 455–56 (2015) (rejecting the Fourth Circuit standard that, "where the pleadings do not state a claim, then *by definition they are* [*jurisdictionally*] *insubstantial*"; noting that the Supreme Court has "long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits"; and holding that "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction" (internal quotation marks omitted)).

Regarding amicus's second argument, "[w]hen, as in this case, a federal court dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction over the [rest of the] case by considering several related factors—judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). Here, judicial economy was well-served by the District Court's discretionary exercise of jurisdiction over plaintiffs' related state-law claims— as detailed below, such claims are clearly deficient under Delaware law. Accordingly, the District Court properly exercised supplemental jurisdiction under 28 U.S.C. § 1367.

Turning, then, to the merits, "dismissals under Rule 23.1 are reviewed de novo." *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015). Upon independent review of the relevant law and facts, we conclude that the District Court did not err in dismissing plaintiffs' complaint.

"A shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." *Espinoza*, 797 F.3d at 234 (alterations and internal quotation marks omitted). "However, demand may be excused where a shareholder is able to show that demand would be futile." *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004). Accordingly, Rule 23.1 provides that a complaint in a derivative action must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . ; and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).

"Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law . . . ." *Espinoza*, 797 F.3d at 234. This includes "[t]he specifics of what constitutes futility," which "is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Scalisi*, 380 F.3d at 138. Therefore, because JPMorgan is a Delaware corporation, Delaware law guides our inquiry.

With respect to what constitutes futility under Delaware law, Delaware's highest court has asserted that, "where[, as here,] the subject of a derivative suit is . . . a violation of the Board's oversight duties . . . [,] the plaintiff [must] allege particularized facts establishing a reason to doubt that the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) (internal

4

quotation marks omitted) (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). "[A] reasonable doubt that a majority of directors is incapable of considering demand should only be found where a substantial likelihood of personal liability exists." *Wood*, 953 A.2d at 141 n.11 (internal quotation marks omitted) (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).

Plaintiffs take issue with the District Court's interpretation of the pertinent Delaware law regarding the standard for determining whether "a substantial likelihood of personal liability exists." The District Court held that, because "[p]laintiffs' claim for breach of fiduciary duty is a *Caremark* claim"—i.e., a claim based on the Board's alleged "failure to monitor," a theory of liability explored in the seminal case of *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996)—it "require[s] proof that . . . the directors utterly failed to implement *any* reporting or information system or controls . . . ." *Cent. Laborers' Pension Fund*, 2014 WL 3639185, at *3 (emphasis supplied) (internal quotation marks omitted) (quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).[1] But plaintiffs claim only "that JPMorgan's controls were . . . *inadequate*," not that they did not exist. *Cent. Laborers' Pension Fund*, 2014 WL 3639185, at *3 (emphasis supplied). Therefore, the District Court reasoned, plaintiffs "cannot maintain a *Caremark* action." *Id.*

Plaintiffs argue that the District Court erred in requiring them to plead that defendants "utterly failed to implement *any* reporting or information system or controls," and that instead, they should have been required to plead only defendants' "utter failure to attempt to assure a *reasonable* information and reporting system exist[ed]." Pls.' Br. 28 (first emphasis supplied) (internal quotation marks omitted).

Plaintiffs' argument, however, has a fundamental shortcoming—the standard that the District Court applied was taken verbatim from *Stone v. Ritter*, a Delaware Supreme Court decision that the District Court was obligated to follow. *See* 911 A.2d at 370 (describing the "necessary conditions predicate for director oversight liability [as follows]: . . . the directors utterly failed to implement *any* reporting or information system or controls . . . ." (emphasis supplied)). Further, this standard appears in the portion of *Stone* that the Delaware Supreme Court described as its "hold[ing]." 911 A.2d at 370. And the standard's plain language could not be any clearer—"any" simply does not mean "reasonable."

---

[1] As the District Court correctly explained, a *Caremark* claim can also be supported by proof that, "having implemented such a system or controls, [the directors] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Central Laborers' Pension Fund*, 2014 WL 3639185, at *3 (internal quotation marks omitted) (quoting *Stone*, 911 A.2d at 370). But this alternative basis is not at issue in this appeal. *See* Pls.' Br. 17 n.6; Defs.' Br. 14 n.2; Pls.' Reply Br. 21.

To be sure, the language that plaintiffs contend the District Court should have used is taken from *Caremark*. *See* 698 A.2d at 971 ("[O]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a *reasonable* information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability." (emphasis supplied)). But *Caremark* was decided by the Delaware Court of Chancery, a trial court from which appeals are generally taken as of right to the Delaware Supreme Court. *See Travelers Ins. Co. v. Henry*, 470 F.3d 56, 62 (2d Cir. 2006) ("[F]ederal courts must follow the holdings of the highest state court in applying state law . . . ."); *cf. Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001) (holding that, while "it is helpful to consider the decisions of [a] state's trial . . . courts," those decisions should be "disregarded" if "a federal court . . . is convinced by other persuasive data that the highest court of the state would decide otherwise" (internal quotation marks omitted)). Additionally, the Delaware Court of Chancery decided *Caremark* before the Delaware Supreme Court decided *Stone*. *See Outten v. State*, 650 A.2d 1291, 1296 (Del. 1994) (holding that, as between two potentially applicable decisions, "[t]he more recent case . . . control[led] th[e] issue").

What is more—and perhaps most damaging to plaintiffs' argument—in setting out the standard to which plaintiffs here object, *Stone* was actually *interpreting Caremark*. *See Stone*, 911 A.2d at 370 ("*We hold that Caremark articulates the necessary conditions predicate for director oversight liability*: . . . the directors utterly failed to implement *any* reporting or information system or controls . . . ." (emphasis supplied)). The District Court was no less bound by *Stone*'s interpretation of *Caremark* than it would have been by *Stone*'s announcement of an entirely new standard.

Our conclusion is buttressed by two additional factors. First, it is not clear to us that, under the facts of this case, replacing the *Stone* standard with the language from *Caremark* would have made any difference in the disposition of plaintiffs' action. Plaintiffs emphasize the word "reasonable," but ignore the word "attempt." It seems implausible that defendants could have "utter[ly] fail[ed] [even] to *attempt* to assure a reasonable information and reporting system exist[ed]," *Caremark*, 698 A.2d at 971 (emphasis supplied), given that "JPMorgan designated an executive located in New York as the head of JPMorgan's [anti-money laundering] program, which included individuals based in the United States and other countries responsible for filing suspicious activity reports in the relevant jurisdictions." *Cent. Laborers' Pension Fund*, 2014 WL 3639185, at *3 (alterations and internal quotation marks omitted).

Second, the notion that the District Court incorrectly interpreted *Stone* is severely undermined by a recent decision of the Delaware Court of Chancery—decided less than two weeks after defendants submitted their appellate brief—in which that court stated the following:

> The Complaint does not allege a total lack of *any* reporting system at [the defendant company]; rather, the Plaintiffs allege the reporting system should have transmitted certain pieces of information . . . . In other words, [the defendant] *had* a system for

reporting risk to the Board, but in the Plaintiffs' view it should have been a better system.

Contentions that the Board did not receive specific types of information do not establish that the Board utterly failed to attempt to assure a reasonable information and reporting system exists, particularly in the case at hand where the Complaint not only fails to plead with particularity that [the defendant] lacked procedures to comply with its . . . reporting requirements, but actually concedes the existence of information and reporting systems. . . .

In other words, the Plaintiffs complain that [the defendant] could have, should have, had a *better* reporting system, but not that it had *no* such system.

Stated more generally, in criticizing the Board's risk oversight and its delegation thereof, throughout the Complaint, the Plaintiffs concede that the Board was exercising *some* oversight, albeit not to the Plaintiffs' hindsight-driven satisfaction. . . . That is short of pleading that the Board utterly failed to implement any reporting or information system or controls, sufficient to raise a reasonable doubt of the directors' good faith.

*In re General Motors Co. Derivative Litig.*, No. CV 9627-VCG, 2015 WL 3958724, at *14–15 (Del. Ch. June 26, 2015) (emphasis in original) (internal quotation marks omitted); *accord TVI Corp. v. Gallagher*, No. CV 7798-VCP, 2013 WL 5809271, at *15–16 (Del. Ch. Oct. 28, 2013) ("Plaintiffs have pled no specific facts to support an inference that Defendant directors utterly failed to implement any reporting or information system or controls. To the contrary, Plaintiffs acknowledge that the Board maintained an audit committee and created an *ad hoc* investigative committee on at least one occasion . . . . I conclude that Plaintiffs have failed to state a . . . claim for failure to exercise oversight.").

For all of the foregoing reasons, we conclude that plaintiffs cannot prevail on their *Caremark* claim—a claim that the Delaware Supreme Court has described as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment," *Stone*, 911 A.2d at 372 (internal quotation marks omitted)—and that the District Court therefore properly dismissed their complaint.

## CONCLUSION

We have considered all of plaintiffs' other arguments on appeal and found them to be without merit. Accordingly, we **AFFIRM** the District Court's July 23, 2014 judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7